# POSITION OF PARTIES WITH
# RESPECT TO SENTENCING FACTORS

**RE:** Alksnys, Tomas

**SD/FL PACTS NUMBER:** 8960401

**DOCKET NO:** 113C 1:24CR20173-001

**OBJECTIONS DUE BY:** November 6, 2024

**DATE AVAILABLE FOR DISCLOSURE:** October 23, 2024

---

I have read the presentence investigation completed by the United States Probation Office.

_____   There are no disputed facts.

____✓____   There are unresolved disputed facts, which are attached.

Any objections counsel may have must be submitted to the U.S. Probation Office **within fourteen (14) days of the receipt of the presentence report**. The U.S. Probation Office will prepare for the Court an addendum addressing any unresolved factual disputes or objections by counsel. **Unless otherwise ordered by the Court, objections will be filed in CM/ECF**.

_____   11/14/2024       Miami, Florida
Tomas Alksnys                  (Date)

_____   11/14/24        North Miami, Florida
Luis Reynoso                   (Date)

_____   _____  Miami, Florida
Stefan Diaz Espinosa           (Date)


Return To:   Ana Brzica
             U.S. Probation Officer
             Wilkie D. Ferguson, Jr. United States Courthouse
             400 North Miami Avenue, 9th Floor South
             Miami, FL 33128



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

Case No. 1:24-CR-20173-BECERRA

v.

TOMAS ALKSNYS,
    a/k/a "John Himmer,"

    Defendant

_____/

    The Defendant, Tomas Alksnys, through undersigned counsel, submits the following objections to the draft presentence investigation report (PSR), which was made available to the parties on October 23, 2024.

### Offense Conduct Objections

    **Factual Objection** to **Paragraph 17**: The second and third sentences of this paragraph are inaccurate in that the Defendant was not involved in advertising the sale of vehicles through various websites on the Internet; nor did he fraudulently induce individuals to purchase cars that his unindicted co-conspirators never intended to deliver. The male unindicted co-conspirator arranged for the false advertising of vehicles for sale prior to the Defendant's involvement and without the Defendant's assistance; and the Defendant never had contact with any of the victims who were interested in purchasing the advertised vehicles. A female unindicted co-conspirator, whom the Defendant never met, handled all communications with the purchasers.

### Sentencing Guidelines Objections

    **Specific Offense Characteristic (SOC) in Paragraph 38:** The PSR recommends that, "Because the offense was committed through mass-marketing, the offense level is increased by two levels, § 2B1.1(b)(2)(A)(ii)."

    Here, the Defendant's offense of bank fraud was not committed through mass-marketing. The scope of this Defendant's agreement [see, §1B1.3(a)] was to open a business bank account in the name of *Auto Haus Motors* by using the fake identity "John Himmer." He used fake identifying documents in the name, "John Himmer," to open the account and thereafter used the fake documents to withdraw funds deposited to the business bank account in the name of *Auto Haus Motors*, which were the proceeds of a fraud committed by unindicted co-conspirators. The fake documents were provided to him by his male unindicted co-conspirator. Notably, while the Defendant withdrew the funds deposited by the victims paying for vehicles that were never delivered, he disbursed the funds to the male unindicated co-conspirator, and he (the Defendant) received ten percent of the sales (about $17,000 total) for doing so.

1

Notably, § 1B1.3, Application Note 1 addresses sentencing accountability and criminal liability. The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the Defendant is to be held accountable in determining the applicable guideline range, rather than on whether the Defendant is criminally liable for an offense as a principal, accomplice, or conspirator.

Further, as provided in Application Note 3, in the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a Defendant is accountable for the conduct (acts and omissions) of others that was: (i) **within the scope of the jointly undertaken criminal activity**; (ii) in furtherance of that criminal activity; and (iii) reasonably foreseeable in connection with that criminal activity. The conduct of others that meets **all three criteria** set forth in subdivisions (i) through (iii) (i.e., "within the scope," "in furtherance," and "reasonably foreseeable") is relevant conduct under this provision. However, **when the conduct of others does not meet any one of the criteria** set forth in subdivisions (i) through (iii), the conduct is not relevant conduct under this provision. The accountability of the Defendant for the acts of others is limited by the scope of his/her agreement to jointly undertake a particular criminal activity. **Acts of others that were not within the scope of the Defendant's agreement**, even if those acts were known or reasonably foreseeable to the Defendant, **are not relevant conduct** under subsection (a)(1)(B).

The scope of the specific conduct and objectives embraced by this Defendant's agreement was in connection to the bank fraud. This Defendant did not set up the websites, he did not post advertisements for the sale of vehicles on any website, he did not negotiate the sale of any vehicle with any potential buyer and had no contact with the victims in this case. Instead, a more culpable, unindicted male co-conspirator(s) set up the website and posted the ads, while another female unindicted co-conspirator (whom the Defendant never met) communicated with the victims. In fact, the Defendant's ability to communicate in English is rather limited and he would not have had the ability to engage in verbal conversations or exchange lengthy written messages with the customers. Thus, this mass-marketing enhancement does not apply to Mr. Alksnys.

**Additional SOC objection in paragraph 38**: The PSR recommends that, "Because the offense otherwise involved sophisticated means and the Defendant intentionally engaged in or caused the conduct constituting sophisticated means, the offense level is increased by two levels, § 2B1.1(b)(10)(C)." Virtually all bank fraud will involve misrepresentation, which often includes false statements and the use of false documents and/or identification. That is all this Defendant did: he opened a business account using fake identifying documents, he then withdrew funds from the account, using the fake identifying documents and disbursed the funds to others. There was nothing sophisticated, complex, or intricate about this Defendant's conduct. Since this enhancement is *Defendant driven*, meaning that *the Defendant must intentionally engage in or cause the conduct constituting sophisticated means*, it does not apply. This Defendant committed basic bank fraud. He did not set up the websites, he did not post advertisements for the sale of vehicles on any website, he did not negotiate the sale of any vehicle with any potential buyer and had no contact with the victims in this case. His bank fraud conduct was not sophisticated.

Based on the above, paragraph 38 should recommend a BOL of 16.

**Role Assessment (**Paragraph 41 and 30): From the beginning, the Defendant was completely unaware of the scope of the conspiracy and had no idea his co-conspirators would not provide any vehicles to the purchasers. He met the unindicted male co-conspirator at a restaurant/lounge in Sunny Isles, Florida. The Defendant was not able to work legally in the United States due to his immigration status. The unindicted co-conspirator proposed the Defendant assist him with an Internet car sale business; however, false identifications were needed as well as the opening of bank accounts (at TD Bank and Bank of America) for monies paid by interested purchasers of vehicles to be deposited. The Defendant did agree to use the false IDs and open the accounts and withdraw the deposited funds, keeping a small fraction of the monies for himself. However, he was under the impression the customers would be receiving the cars they had ordered.

The Defendant did not set up the websites, he did not post advertisements for the sale of vehicles on any website, he did not negotiate the sale of any vehicle with any potential buyer and had no contact with the victims in this case. The false identification documents were also made prior to his involvement, by others. **Mr. Alksnys' participation in the scheme was limited to opening bank accounts with the false IDs that were provided to him by a unindicted co-conspirator as well as withdrawing and disbursing the ill-gotten monies from the sale of vehicles the unindicted conspirators never intended to provide or deliver (unbeknownst to the Defendant).** Even more importantly, the Defendant was paid a very small percentage (**only 10%**) of the illegally obtained funds in comparison with his unindicted co-conspirators, which is reflective of his lower degree of culpability among the players of this scheme. The amount he received was a mere fraction (**$17,000**) of the entire loss amount. The Defendant did not participate in planning and/or organizing the criminal activity. Not only were most of the profits given to others, but he also did not supervise or direct anybody. He had no decision-making authority, nor did he influence the exercise of decision-making authority.

Based on the above, the Defendant is entitled to a two-level reduction for minor role pursuant to § 3B1.2(b).

**Criminal History Category** should be I: The PSR recommends that the Florida State conviction in paragraph 49 should result in two criminal history points, pursuant to § 4A1.1(b), based on a sentence of time served that was 74 days, resulting in a Criminal History Category of II.

It is noted that § 4A1.2(a)(1) states, "The term "prior sentence" means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." It is the position of the Defendant that the debit/credit card(s) possessed were part of the instant offense in that they were used, or were intended to be used, to withdraw ill-gotten gains of the car sale scheme. That was the only purpose for the Defendant being in possession of said documents for which state charges were filed. Therefore, his possession was part of the instant offense and should not receive any criminal history points and his criminal history category should be I.

It also should be pointed out that the prior sentence based on his misdemeanor conviction resulted in two versus one criminal history points only because the extended sentence of "time

3

served" was given his illegal status in the U.S. and inability to make bond. The period of time he spent in jail was longer than the 60-day limit for one-pointers under § 4A1.1(a); therefore, he was assessed two criminal history points under § 4A1.1(b). A criminal history category II for one misdemeanor conviction considerably overstates this young man's criminal history and likelihood of recidivism; nonetheless, our position is that he should not receive any criminal history points for this prior state case, because it is directly related to and was part of the instant offense and does not meet the definition of "prior sentence" under § 4A1.2(a)(1)

**Qualification for Zero-Point Offender Reduction under § 4C1.1:** Based on the above, the Defendant meets all the criteria for the two-level zero-point offender reduction pursuant to § 4C1.1. He should have no criminal history points based on the above objection; has not received an adjustment for terrorism (covered by § 3A1.4); did not use violence or credible threats of violence in connection with the offense; the offense did not result in death or serious bodily injury; the offense of conviction is a fraud, not a sex offense; the Defendant did not personally cause substantial financial hardship [to be determined independently of the application of § 2B1.1(b)(c)]; the Defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; the offense of conviction is not an offense involving individual rights (covered by § 2H1.1); the Defendant did not receive an adjustment under § 3A1.1 (hate crime motivation or vulnerable victim) or § 3A1.5 (serious human rights offense); and, the Defendant did not receive an adjustment under § 3B1.1 (aggravating role) and was not engaged in a continuing criminal enterprise.

Therefore, an additional two-level reduction is warranted, pursuant to § 4C1.1.

Based on all the above, paragraph 38 should recommend a base offense level of 16. Paragraph 39 is correct given the conviction under 18 U.S.C. § 1957 which raises the offense level to 17. A minor role reduction of two levels in paragraph 41 is warranted, bringing the Adjusted Offense Level to 15, in paragraph 43. The Defendant is a zero-point offender, and a two-level reduction is appropriate at paragraph 44, resulting in a level of 13. A three-level reduction for acceptance of responsibility has been recommended at paragraphs 45 and 46; however, since the revised offense level based on our objections is less than 16, he is eligible only for two levels. Thus, the Total Offense Level, as represented by the Defendant, is 11.

**Conclusion**

The Defendant has been in custody since April 2, 2024. The time he will have served from the date of his arrest on the federal charges until the date of his sentencing on December 2, 2024, is 8 months and 1 day. In addition, if the Court finds the prior state case is relevant conduct to the instant offense, the Defendant asks that the 74 days (2.5 months) be taken into consideration when imposing sentence here. We contend that a sentence of time served with a term of supervised release would serve as sentence sufficient, but not greater than necessary, based on this Defendant's background, his limited participation in the offense and his personal characteristics set forth in the PSR, as well some additional background information set forth in a brief, forthcoming sentencing memorandum and a few character letters.

4

If the Court agrees to all the objections, the Defendant's total offense level (TOL) will be 11. Based on a TOL of 11 and a criminal history category of I, his guideline imprisonment range would be 8 to 14 months. He would also fall in Zone B of the Sentencing Table, which allows for a split sentence and even a sentence of probation.

Respectfully Submitted,

s/ Luis E. Reynoso
Luis E. Reynoso, Esq.
FL Bar No. 0864021

REYNOSO ERICKSON TRIAL LAW, P.A.
*Counsel for Tomas Alksnys*
1801 NE 123rd Street, Suite 314
North Miami, Florida 33181
Direct Telephone: (305) 968-2043
Office Telephone: (754) 216-4981
luis@reynosoerickson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of November 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys or parties of record.

Electronic signature/LER
LUIS E. REYNOSO